WICKER, J.,
dissents with reasons.
| ^Because I would affirm the judgment of the trial court, I respectfully dissent.
I agree with the majority that the trial court erred when it found that the Don-gieuxs were the manufacturers of the home for purposes of La. C.C. art. 2545, and that the Dongieuxs were, therefore, deemed to know that the house they sold had a redhibitory defect. Being the general contractor in the construction of the home is not necessarily equivalent to being the manufacturer for purposes of La. C.C. art. 2545. Dumser v. Kardon, 13-557 (La. 5 Cir. 12/12/13). Under the facts of this case, where the Dongieuxs hired a contractor, a construction company, an architect, and a pool company to design and construct the home and the pool, and where the Dongieuxs had no specialized construction knowledge, they were not the manufacturers, although they were the general contractor. Therefore, the Dongieuxs are not deemed to know that the home contained two redhibitory defects — the backyard flooding in the pool area and the carport flooding.
I, however, disagree with the majority’s finding that the property did not suffer from a redhibitory defect because the Newtons knew of the defect when they purchased the property. After a de novo review of the trial record, I am of the opinion that the property suffered from two redhibitory defects which were not open and obvious and that the Newtons did not fail to make a reasonable | inspection of the property. Further, while the parties to this sale executed waivers of redhibitory rights and the sale was “as is”, it is my opinion that the waivers were invalidated because the Don-gieuxs concealed the fact that the property flooded (rather than the “ponding with quick drainage” as described by the Don-gieuxs), and that during such floods, dirt washed from the lawn onto the pool’s deck and into the pool. I am also of the opinion that the Dongieuxs failed to disclose the fact that the carport flooded and that, therefore, the stairs to the second floor apartment were rotted. “... A buyer is not bound by an otherwise effective exclusion or limitation of the warranty when the seller has declared that the thing has a quality that he knew it did not have.... ” La. C.C. art. 2548.
In the February 5, 2007 property disclosure form, the Dongieuxs responded “Yes” *487 to question number four under “Section 1: Land,” which asked, “Has any flooding, water intrusion, accumulation, or drainage problem been experienced with respect to the Land?” The Dongieuxs stated on the form, “during a very hard rain,- the backyard ponds water. Drains quickly.” The Dongieuxs responded “no” to “Section 3: Structure” question 3, which asked, “Has any structure on the property ever taken water by flooding (rising water or otherwise)?” After the property disclosure form was executed and before the act of sale was consummated, Mrs. Newton asked Ms. Dongieux about the “ponding” problem. In response, Mrs. Dongieux told Mrs. Newton and their real estate agent, Bonnie Schultz, that after a hard rain a “little puddle forms where the sidewalks meet”. Mrs. Dongieux elaborated that, “Well, once I was having a party, and it rained, and I got that little puddle/pond, and I took a beach towel and wiped up.” Neither Dr. nor Mrs. Dongieux ever mentioned the pool’s deck or the carport as a place where flooding occurred. Furthermore, the Dongieuxs never mentioned that a sump pump was installed behind bushes to assist with the flooding and drainage issue.
| sMr. Newton testified that, based upon Mrs. Dongieux’s explanation of the only disclosed defect, he did not make any further investigation into that disclosure. He did, however, have the home and pool inspected. Neither the pool inspection report nor the home inspection report indicated that the inspectors observed the flooding later revealed on both the video and photos taken by the Newtons. Based upon the evidence, it is my opinion that the Newtons discharged their duty to inspect when they queried Mrs. Dongieux about the yard flooding and she dissembled as noted above, after which they retained inspectors with instructions consistent with the information Mrs. Dongieux had provided to them. While the majority deems the Newtons to have known of the defects, causing them not to be redhibitory, I respectfully disagree.
In his Reasons for Judgment, the trial court found in part:
... On February 5, 2007, the Don-gieuxs signed a property disclosure revealing that “[djuring a very hard rain, the backyard ponds water. Drains quickly”. Ms. Newton testified that she asked Ms. Dongieux to further expláin what they meant by this disclosure and Ms. Dongieux told her that on one occasion they had a heavy rain prior to a party that caused some flooding in the backyard. Ms. Dongieux explained that she was able to mop up the excess water with a beach towel rather than waiting for it to drain. The parties then entered into an Agreement to Purchase on February 15[sic] 2007, and the Newtons completed inspections of the Property and pool on February 21, 2007....
With respect to the redhibition claims, the Newtons allege that the Property was defective at the time of purchase because the swimming pool was lower than the surrounding yard and landscaping. The Newtons also allege that the Dongieuxs did not have adequate drainage for the Property and also failed to disclose that the carport flooded due to an unlevel slab. Video evidence introduced by the Newtons demonstrated an excessive amount of water flooding the pool and entire surrounding area following a hard rain. Though the Dongieuxs denied ever experiencing this type of flooding during the time they owned the Property, the Newtons contend that this occurred on several occasions after they purchased the Property and caused dirt and debris to flow into the pool each time. The Newtons also introduced photos showing the water that became *488 trapped in the rear carport area due to the unlevel slab.
|4... With respect to the flooding in the rear carport area, the Newtons introduced photographs of the flooding. They also presented pictures of the bottom of the stairs that had started to rot due to the water that became trapped in the rear carport area. Finally, the Newtons testified that after they had concrete added to level the carport slab, the flooding stopped. Based on the foregoing, the Court finds that this defect existed in the carport area prior to the sale of the Property.
With respect to the flooding in the pool area, William O’Berry, Jr. of Southern Style Swimming Pool Services testified that the pool flooded because the pool is lower than the yard and landscaping. Isaías Toscano, the contractor who elevated the pool, also testified that the pool flooded because it was 9" lower than the yard. Both of these witnesses testified that they saw no evidence of sinking or shifting, and therefore the elevation problem had to date back to the time of the original construction of the pool area. Furthermore, the real estate agent, Bonnie Schulz [sic], testified that she witnessed the flooding in the pool area the day that she delivered the keys to the Newtons. In addition, following the act of sale, the Newtons found a sump pump behind shrubs that could be used to remove water from the backyard area. Therefore, the Court finds that the preponderance of the evidence demonstrates that the flooding of the yard into the pool area existed prior to the act of sale.
Upon de novo review, I am of the opinion that the district court, though in error on the issue of the Dongieuxs’ manufacturer status, had sufficient evidence to reasonably conclude that the Dongieuxs had actual knowledge of the two flooding defects when they sold the property to the Newtons. Evidence established that the Dongieuxs had installed additional drainage in their “backyard” to relieve flooding after the initial phase of construction of the property. Furthermore, the trial court may have reasonably inferred from the defendants’ installation of a sump pump by the carport that the defendants knew that the property had a problem with flooding that exceeded the “ponding” as described by Mrs. Dongieux.
Therefore, it is my opinion that the Don-gieuxs’ failure to disclose the flooding of the property’s pool’s deck and carport, and Mrs. Dongieux’s explanation minimizing the extent of the disclosed backyard flooding, voided the waivers of redhibitory rights executed by the Newtons.
1 ¿For the foregoing reasons, I strongly feel that the Newtons are clearly entitled to the relief granted by the trial court. Accordingly, I would affirm the judgment of the trial court in favor of the Newtons and against the Dongieuxs.
GRAVOIS, J., dissents for the reasons assigned by WICKER, J.